Julian Aymett v. Commissioner.
Aymett v. Commissioner
Docket No. 41548.
United States Tax Court
1954 Tax Ct. Memo LEXIS 268; 13 T.C.M. (CCH) 242; T.C.M. (RIA) 54083; March 23, 1954
W. C. Rodgers, Esq., 1001 Exchange Building, Memphis, Tenn., for the petitioner. J. Frost Walker, Esq., and W. Preston White, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves deficiencies in income tax and penalties as follows: Year
Deficiency
5% Penalty
1948
$ 8,726.47
$436.32
1949
12,621.56
631.08
The issues are whether the respondent erred in increasing the amount of income realized as commissions from sales of notes, and in imposing negligence penalties under section 293(a), I.R.C.
[Findings of Fact] The petitioner, an individual residing in Memphis, Tennessee, filed his returns for the taxable years with the collector of internal revenue for the district of Tennessee. *269 The petitioner, since 1927, has been engaged in the business of selling notes, secured by real property, at a discount. He maintained an office but had no employees to assist him in conducting the business. Petitioner obtained the notes from individuals desiring to borrow money on the security of their homes. The notes were drawn in accordance with instructions give by petitioner. Petitioner did not have a fixed percentage fee or other charge for his services in disposing of the notes. He never knew the amount of his selling commission until the transaction was closed, which at times took a month. His practice was to make whatever he could on each transaction, and he made some commission on every sale. During the taxable years all of the notes were sold to C. A. Tindall & Co., Memphis, Tennessee. There were 71 sales in 1948 for a total of $121,477.95, and 88 in 1949 for a total of $145,539.20. One or more sales was made each month of each year. Payment was made by the purchaser in each instance by a check payable to the order of petitioner. Petitioner did not maintain a bank account during the taxable years because of a pending proceeding in court against him. Each of the *270 checks received by him for the selling price of notes was cashed and the proceeds were delivered to the borrower, less any amounts paid by petitioner to satisfy liens and selling expenses chargeable to the borrower, including a commission to himself. The only permanent record maintained by petitioner to disclose the amount of his commissions each taxable year from the sale of notes was a small book in which he merely entered a figure purporting to represent the amount realized by him as commission in each transaction. No other records were maintained by petitioner to reflect the amount of commissions earned in the sale of notes. Any memoranda made relating to a sale was destroyed when an amount for commission was entered in the book. The borrower never knew the amount for which the notes were sold or the charge made by petitioner for his services. The book contains 60 entries, totaling $6,043.25, for the 71 sales made in 1948, and 69 entries, totaling $5,949.12, for the 88 sales made in 1949. The amounts entered in the book ranged from $10 to $258.50. The petitioner could not identify any sale for which an entry was made in the book. Petitioner did not have income from any other *271 source. The petitioner reported in his returns for the taxable years the amounts of $6,043.25 and $5,949.12, respectively, as "receipts" from his brokerage business. In his determination of the deficiencies the respondent determined that commissions on sales were understated by the amount of $23,507.49 in 1948 and $30,785.48 in 1949, and imposed the penalty of 5 per cent provided by section 293 (a) of the Code. The petitioner earned commissions each year equal to 6 per cent of the selling price of the notes. Some part of the deficiency each year was due to negligence and intentional disregard of rules and regulations. Opinion The petitioner argues on brief that the determination of the respondent lacks a factual basis and therefore is not entitled to a presumption of correctness, citing Helvering v. Taylor, 293 U.S. 507. Under such a contention he says that respondent has failed to establish the receipt of commissions in excess of the amounts shown in the returns, and if he is wrong in his allegation of arbitrariness in the determination of the deficiencies, the evidence submitted by him proves the correctness of his returns. In view of our conclusion from all *272 of the evidence that petitioner understated the amount of commissions in his returns, the effect of which will be a deficiency each year, there is no need to consider whether the deficiencies resulted from arbitrary determinations of the respondent, beyond pointing out that a report of an examination, which the respondent considered in arriving at the deficiencies and petitioner relies upon as a basis for his charge of arbitrariness, is not a part of the record and statements allegedly appearing therein cannot, for that reason, be considered. Petitioner was required by statute and regulations to maintain records of account to clearly reflect his income and if the records do not so reflect income, the Commissioner is authorized to determine it by other methods. Sections 41 and 54, I.R.C.; sections 29.41-1 and 29.54-1, Regulations 111. The facts here establish that the records maintained and followed in reporting gross income were insufficient to clearly reflect income. Under the circumstances, the respondent was justified in adopting another method to determine petitioner's gross income from commissions, his only source of income. Testimony of petitioner that *273 his books are accurate and that the returns filed in accordance therewith are correct is not enough to prove the fact, particularly, as here, in the light of other evidence to the contrary. Louis Halle, 7 T.C. 245, affd., 175 Fed. (2d) 500. The deficiency notice does not reveal the basis for the conclusions reached that the amounts reported for commissions were understated. The statements appearing therein on the point are merely that the commissions reported in the returns were understated, $23,507.49 in 1948 and $30,785.48 in 1949. The results reached by the respondent indicate that he computed the understatements of income on the basis of a fixed fee of 25 per cent of the selling price of notes. The evidence here is that petitioner had no fixed fee for his brokerage services; instead, he charged whatever he could in each transaction. Petitioner alleged in his petition that the average of his commissions was about 5 to 6 per cent of sales. The amount of sales used in the computation is not in evidence or alleged. No entries were made in the book for 11 of the 71 transactions in 1948 and 19 of the 88 sales made in 1949, even though some commission was *274 made on every sale. Actual sales in 1949 were about $26,000 in excess of 1948, yet about $1,000 less commission was reported. Applying the average recorded commission per sale to the actual number of sales made discloses an understatement of income of about $1,100 in 1948 and $1,750 in 1949. Understatements of income also result from application of the alleged average commissions to actual sales. While petitioner did not establish that he correctly reported his income from commissions, it is apparent that the amounts determined by the respondent are excessive. In view of the unsatisfactory condition in which we find the record, we are compelled to use our best judgment in determining reasonable amounts as income from commissions. Such judgment has led to a conclusion that 6 per cent of the sales constitutes the taxable income realized by petitioner from the transactions. The findings require no detailed discussion of the penalty issue. Petitioner not only understated his income but disregarded rules and regulations in keeping accounts to record his earnings. No proof was made that the understatements resulted from lack of negligence or that the rules and regulations were not *275 intentionally disregarded. The respondent committed no error in imposing the penalties under section 293 (a) of the Code. Decision will be entered under Rule 50.